## A09A2315. HARMAN v. McAFEE.
(691 SE2d 586)

ANDREWS, Presiding Judge.

Joseph Harman appeals from the trial court's order denying his motion for summary judgment and granting Carolyn McAfee's motion for summary judgment on her claims under a conditional guaranty and for attorney fees and expenses of litigation. Finding no error, we affirm.

This case arose after James McAfee loaned Carter Oaks Crossing $400,000 to refinance a mortgage. Joseph Harman, as president of Carter Oaks, signed a promissory note providing that Carter Oaks would repay the amount to McAfee plus 25 percent interest in semi-annual installments beginning June 30, 1999, and ending December 31, 2005.

The note required that all net cash flow be applied to make the semi-annual payments to McAfee until the note was paid in full. Harman testified at his deposition that this meant that McAfee was to be paid before Harman or any of the other partners in Carter Oaks were repaid. Harman also signed a Conditional Guaranty of the note, guaranteeing payment in the event of "any act of conversion, misappropriation, theft or embezzlement with respect to any money or other property of Maker by the undersigned in his capacity as an employee, officer, director, agent or employees of Maker."

Carter Oaks defaulted on the promissory note and McAfee filed a complaint against Harman contending that the guaranty was triggered by misapplication of funds that should have been used to repay him. McAfee also alleged fraud, claiming that Harman fraudulently misrepresented that Carter Oaks had authority to enter into the promissory note when, in fact, the terms of the refinancing prohibited it; and, that in order to circumvent this prohibition, Carter Oaks's payments to McAfee were to be disguised as "management fees." McAfee also claimed that Harman failed to disclose that $400,000 was not the full amount needed to close on the refinancing and Harman was himself putting up money to close. Further, McAfee alleged that Harman intended that Carter Oaks

would repay him, Harman, before it repaid McAfee.[1]

Harman moved for summary judgment on the ground that McAfee's claims against him had been discharged in a no-asset Chapter 7 bankruptcy case which was filed after the date of the note and guaranty giving rise to McAfee's claims. Harman acknowledged that McAfee was not listed as a creditor in the bankruptcy case. But Harman argued that it must be determined by the bankruptcy court whether McAfee's claims fell within the exceptions to discharge.

McAfee responded, pointing out that, as Harman acknowledged, all of the claims fell under 11 USC § 523 (a) (2), (4) and (6),[2] and as such were not dischargeable in bankruptcy where they were neither listed nor scheduled in the bankruptcy proceeding. McAfee also filed a motion for summary judgment on the claims under the guaranty, the claim of fraud, and for attorney fees and expenses.

The trial court denied Harman's motion for summary judgment, holding that the claims were not discharged in bankruptcy. The trial court granted McAfee's motion for summary judgment on the claim for money owed under the guaranty. The court found that Harman admitted in his deposition testimony that he reimbursed himself $42,500 after receiving McAfee's loan and also found that Harman admitted reimbursing another partner before paying McAfee, contrary to the terms of the note. The trial court denied McAfee's motion for summary judgment on the claim for damages due to Harman's alleged fraud in securing the promissory note. Harman appeals.

1. In his first enumeration of error, Harman claims that the trial court erred in holding that McAfee's claims had not been discharged in the bankruptcy case. Harman argues that the trial court's order states only that the debt was not discharged in the bankruptcy proceeding because McAfee had no notice of the bankruptcy filing. According to Harman, the trial court should also have stated that McAfee's claims fell under the exceptions to discharge of section 523 (a) (2), (4), or (6). Harman also argues that before the trial court could find that the claims were not discharged in the bankruptcy proceeding, it should have required McAfee to do more than show she has a viable colorable claim; she should have been required to

---

[1] At some point after the complaint was filed, James McAfee died, and his wife Carolyn was substituted as plaintiff.

[2] Debts listed in sections 523 (a) (2), (4) and (6) describe debts which arise from intentional torts such as fraud. They include debts incurred by "false pretenses, false representation or actual fraud . . ." (523 (a) (2)); debts incurred by "fraud or defalcation while acting as a fiduciary . . ." (523 (a) (4)); and debts "for willful and malicious injury . . ." (523 (a) (6)). Section 523 (a) (3) (B) excepts from discharge "intentional tort" debts that were not listed.

*In re Keenom*, 231 B.R. 116, 120 (Bankr. M.D. Ga. 1999).

prove by a preponderance of the evidence that she is entitled to an exception under 11 USC § 523 (a) (2), (4) or (6).

First, we note that Harman does not argue that McAfee's claims do not fall under the exceptions to discharge, but rather that "no such determination has been made." Harman cites to no case law providing that the court must make these explicit findings and we find none. Harman has never denied and has repeatedly affirmed that McAfee's claims fall under the exceptions to discharge of section 523 (a) (2), (4) or (6). Further, the trial court explicitly found that McAfee made out more than a colorable claim on her complaint of a guaranty violation by granting summary judgment on that claim. The court also implicitly found sufficient evidence on the fraud count to send it to a jury.

Second, McAfee was only required to show that she had a viable, colorable claim in order to be entitled to an exception from discharge.

> [T]his Court disagrees with those courts that say only a bankruptcy court can decide whether a debt is discharged under section 523 (a) (3) (B). The statutory scheme provides that a state court can decide whether the creditor has a *colorable or viable* claim that the debt is of a kind specified in sections 523 (a) (2), (4), or (6) without intruding on the exclusive jurisdiction of the bankruptcy courts to determine if it actually is such a debt. And if the state court finds the [creditor] does have a *colorable* claim under sections 523 (a) (2), (4), or (6) and was deprived of the opportunity to timely request a determination of dischargeability of the debt because he had no notice of the bankruptcy proceeding in time to do so, then such a state court has the authority to declare that the debt was not discharged in the bankruptcy proceeding and proceed to a judgment that the debtor remains personally liable for the debt.

(Emphasis supplied.) *In re Keenom*, supra at 126-127.

Therefore, contrary to Harman's contention, the state court has the authority to find that the debt was not discharged if the creditor has a "colorable claim" under section 523 (a) (2), (4) or (6). As previously discussed, the trial court's order did so find.

2. Harman also argues that the trial court erred in denying his motion to vacate the order on summary judgment and allow him seven days to respond to McAfee's motion for summary judgment. Harman did not respond to McAfee's motion for summary judgment because he was unaware that the motion had been filed. The motion was e-filed and, as counsel acknowledged, he did not check the LexisNexis file serve in-box for filings during the period in question.

Counsel does not claim that there was a problem with viewing the filings in his LexisNexis in-box and acknowledged that he failed to check the in-box. Counsel stated that he was relying on e-mail notification of the filings and opined that he did not receive that notification because his e-mail in-box became full while he was on vacation and therefore, the "file serve" notification e-mails were "bounced" back to the sender.

Fulton County State Court's Local E-Filing Rule 2-108 provides that if there was an error in transmission to the served party or other technical problems experienced by the filer, the court may, upon satisfactory proof, enter an order permitting the document to be filed nunc pro tunc to the date it was first attempted to be sent electronically. But, in this case, on counsel's own evidence, there was no error in the transmission of the document, nor were there other technical problems experienced by the filer. Accordingly, Fulton County State Court Local E-Filing Rule 2-108 provides no relief for Harman.

Further, the rules provide that service is complete upon transmission to the electronic filing service provider. Fulton County State Court Local E-Filing Rule 2-107 (2). Harman's counsel does not dispute that a copy of McAfee's motion for summary judgment was sent to his LexisNexis online in-box. As McAfee points out, there is no requirement in the court rules that counsel receive e-mail notification and the agreement with LexisNexis makes clear that this is a service provided to the subscriber and it is the subscriber's responsibility to ensure that e-mail accounts "are set up properly to receive Email Notifications." Harman's counsel does not contend otherwise. Accordingly, we conclude that this enumeration of error is without merit. See *Saxton v. Davis*, 262 Ga. App. 72, 73-74 (584 SE2d 683) (2003) (although counsel claimed that he never received notice that the motion to dismiss had been filed, trial court did not err in granting motion where record showed that motions were properly mailed).

*Judgment affirmed. Miller, C. J., and Barnes, J., concur.*

Decided March 8, 2010 — 

*Smith, Diment & Conerly, Joseph N. Smith, Charles S. Conerly, Randall C. Parian*, for appellant.

*Cushing, Morris, Armbruster & Montgomery, Kevin R. Armbruster, Jason C. Grech, Kirk M. McAlpin, Jr.*, for appellee.